*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

DWAYNE ANDREW DEAL,

       Defendant-Appellee.

UNPUBLISHED
February 25, 2021

No. 349781
Wayne Circuit Court
LC No. 18-008590-01-FC

Before: JANSEN, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Appellant, the prosecution, appeals as of right the trial court's order dismissing with prejudice the charges against defendant. We affirm.

## I. FACTS & PROCEDURAL HISTORY

Defendant fatally shot Broderick Nathaniel and shot Alexander George, who was injured but survived. Defendant was charged, as a second-offense habitual offender, MCL 769.10, with first-degree premeditated murder, MCL 750.316, assault with intent to murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. Defendant claims he acted in self-defense and in defense of another. The first trial against defendant ended in a mistrial. The prosecution then charged defendant a second time in the instant case.

Before and during trial, defendant raised issues about the prosecution's failure to provide a witness list and whether certain witnesses would be available to testify. Based on those issues, defendant moved for a mistrial several times without success. However, the trial court eventually declared a mistrial when it learned on the fourth day of trial that the prosecution had disclosed new evidence—"phone dumps"—after resting its case.[1] The court granted the mistrial without

---

[1] The parties never defined the term "phone dumps," but they use this term to refer to data, including text messages, extracted from cell phone belonging to several key witnesses. At a later

-1-

prejudice because it did not believe the late disclosure was intended to goad defendant into moving for a mistrial.

Later, defendant moved to dismiss the prosecution with prejudice, and the court held a hearing on the motion. The trial court heard testimony only from Detective Sergeant Craig MacDonald, the officer-in-charge of the case. He testified that he believed he told the prosecution about the phone dumps immediately after he learned of them on the second day of trial and gave them to the prosecution the following morning before the trial resumed. On the basis of this timeline, the trial court concluded that the prosecution intentionally delayed informing the defense of the phone dumps and thereby engaged in misconduct designed to goad defendant into moving for a mistrial. The court then dismissed the case with prejudice. This appeal followed.

## II. ANALYSIS

Appellant argues that the trial court clearly erred by finding that the prosecution intentionally goaded defendant into consenting to a mistrial. We disagree.

We review de novo a constitutional double-jeopardy challenge. *People v Lett*, 466 Mich 206, 212-213; 644 NW2d 743 (2002). However, we review a trial court's decision to grant or deny a motion to dismiss for an abuse of discretion. *People v Herndon*, 246 Mich App 371, 389; 633 NW2d 376 (2001). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014). Issues of prosecutorial goading are generally governed by principles set forth in *People v Dawson*, 431 Mich 234; 427 NW2d 886 (1988). See *People v Holtzman*, 234 Mich App 166, 193; 593 NW2d 617 (1999) (relying on *Dawson* to conclude that retrial was not barred where prosecution did not provoke a mistrial). A trial court's determination that a prosecutor intentionally goaded the defendant into moving for a mistrial is a factual finding reviewed for clear error. *Dawson*, 431 Mich at 258 & n 57. "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002).

"Under both the Double Jeopardy Clause of the Michigan Constitution and its federal counterpart, an accused may not be 'twice put in jeopardy' for the same offense." *Lett*, 466 Mich at 213 (citations omitted). "Being twice put in jeopardy includes being subjected to a retrial after the initial prosecution ends in a mistrial."[2] *Dawson*, 431 Mich at 236 (quotation marks omitted). However, "retrial is not automatically barred whenever circumstances compel the discharge of a factfinder before a verdict has been rendered." *Lett*, 466 Mich at 215 (quotation marks and citation omitted). "[W]here a defendant requests or consents to a mistrial, retrial is not barred unless the

---

hearing, the trial court opined that certain text messages were potentially exculpatory because they were relevant to whether defendant acted in reasonable defense of himself or others.

[2] Dismissal with prejudice can constitute a form of mistrial. See *People v Tracey*, 221 Mich App 321, 327; 561 NW2d 133 (1997) (stating that the court's granting of the defendant's motion to dismiss with prejudice constituted "a species of mistrial" because it was a motion "to terminate the trial . . . before a decision on the merits . . .").

prosecutor has engaged in conduct intended to provoke or 'goad' the mistrial request." *Id.* (citations omitted). A trial court should base its determination of prosecutorial intent on "the objective facts and circumstances of the particular case." *Dawson*, 431 Mich at 257, quoting *Oregon v Kennedy*, 456 US 667, 679-680; 102 S Ct 2083; 72 L Ed 2d 416 (1982) (POWELL, J., concurring) (quotation marks omitted). That is an inquiry "for which the trial court is best suited." *Dawson*, 431 Mich at 258 n 57 (quotation marks and citation omitted).

The trial court noted that the prosecution failed to file a witness list or ensure that particular law enforcement witnesses were available to testify. As a result of the prosecution's failure to take sufficient efforts to secure a police witness, the trial court agreed to instruct the jury that it could infer that the missing witness's testimony would have been adverse to the prosecution. See M Crim JI 5.12. Additionally, by the time the prosecution rested its case, George, the surviving victim, had attempted to invoke his Fifth Amendment right against self-incrimination in front of the jury, which could have led the jury to view defendant's theories of self-defense or defense-of-others more favorably. As noted by the trial court, the timing of the prosecution's disclosure of the phone dumps is telling because it occurred after the prosecution had a complete view of the downward trajectory of its case.

In addition, at a hearing on the production of the phone dumps, Detective MacDonald's testimony implied that the prosecution knew of the phone dumps as early as the second day of trial, yet waited to disclose them until the fourth day of trial, after the prosecution had rested its case. Although the testimony was equivocal, after hearing it, the trial court deemed it reliable.

When reviewing for clear error, we consider the "special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018), quoting MCR 2.613(C) (quotation marks and emphasis omitted). In light of Detective MacDonald's testimony and the deference we must afford the trial court's assessment of Detective MacDonald's credibility, we cannot conclude that the trial court clearly erred by finding that the trial prosecutor intentionally delayed disclosing the phone dump evidence to the defense.

Appellant now argues that the trial court erroneously relied on an incomplete factual record because the trial prosecutor did not testify at the trial court's hearing on the issue. According to appellant, the trial prosecutor's testimony would have clarified when she learned about the phone dumps and negated the trial court's reason for finding prosecutorial goading. However, during the hearing, the prosecutor arguing the matter stated, "Again, I have only the benefits of the transcripts of trial and now [Detective] MacDonald's testimony. I think the Court has enough information at this time to determine whether this act was intentional or not." In so stating, the prosecution seemingly waived any claim of error on appeal regarding its decision not to call on the trial prosecutor to testify. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (when counsel clearly expresses satisfaction with a trial court's decision, counsel's action constitutes a waiver).

Appellant now proffers additional evidence it failed to submit to the trial court: an affidavit by the trial prosecutor and cell phone screenshots of text messages between the trial prosecutor and the police officers in charge of the case, including Detective MacDonald, and the trial prosecutor and defense counsel. However, we cannot consider this evidence here because it is

"impermissible to expand the record on appeal." *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999).

Moreover, a review of that evidence shows appellant's argument is without merit. During the hearing on this matter, the prosecution argued that the late disclosure of the phone dumps was unintentional, and now the trial prosecutor's affidavit does not include any additional information that the trial court did not already possess at the time it rendered its decision.

The only objective additional evidence presented by the prosecution on appeal are the screenshot text messages attached to the prosecutor's brief on appeal. According to the messages, on March 4, 2019, the trial prosecutor texted the previous officer in charge, Detective Davenport, and was informed that Detective MacDonald was acting as the officer in charge of the case. The trial prosecutor then asked Detective Davenport if there were any phone dumps. That same morning, the trial prosecutor exchanged text messages with Detective MacDonald and asked if there were phone dumps. Detective MacDonald replied that he did not remember and the trial prosecutor informed Detective MacDonald that she did not have any phone dumps. The trial prosecutor exchanged further text messages with Detective MacDonald on Wednesday, March 6, 2019, but the phone dumps were not mentioned. The next text message exchange provided is dated Friday, March 8, 2019, between the trial prosecutor and Detective MacDonald, wherein the trial prosecutor indicates that Detective MacDonald failed to leave the phone dumps with her to deliver to the defense.

Thus, the messages indicate that defense counsel requested the phone dumps from the trial prosecutor before the trial began on Monday, March 4, 2019, and that the trial prosecutor passed the inquiry along to the detectives that same day. However, the messages do not indicate when the trial prosecutor was made aware of the phone dumps or that she disclosed the phone dumps to the defense in a timely manner.

Accordingly, we are not left with a definite and firm conviction that the trial court erred when it concluded that Detective MacDonald's testimony was credible and supported the conclusion that the trial prosecutor's failure to disclose the phone dumps was intentional.

## III. CONCLUSION

We cannot conclude that the trial court clearly erred by finding that the prosecution's disclosure of the phone dump evidence on the fourth day of trial was intended to goad the defense into seeking or consenting to a mistrial. Accordingly, we affirm.

/s/ Kathleen Jansen
/s/ Michael J. Riordan