PEOPLE v ECHAVARRIA

Docket No. 203373. Submitted December 3, 1998, at Detroit. Decided January 8, 1999, at 9:05 A.M. Leave to appeal sought.

Celso Echavarria was convicted by a jury in the Recorder's Court of Detroit, Jeffrey G. Collins, J., of possession of 650 or more grams of cocaine. The defendant previously had been charged with and tried for possession with intent to deliver 650 or more grams of cocaine and possession with intent to deliver marijuana, but the prior trial had resulted in a mistrial. Over the defendant's objection that a retrial would violate his double jeopardy rights, the retrial of the defendant was permitted on the basis that the prior trial had been declared a mistrial because of manifest necessity. The court denied the defendant's motion to suppress the evidence seized at his residence pursuant to a search warrant, finding that the affidavit supporting the request for the search warrant contained sufficient reliable evidence to establish probable cause. The court also refused to grant a motion for adjournment of the second trial and a motion for withdrawal as counsel made by one of the defendant's two attorneys, the motions having been made on the morning the second trial was scheduled to begin. The defendant appealed.

The Court of Appeals *held*:

1. In the first trial, the jury returned a verdict of possession of 650 or more grams of cocaine. However, during the polling of the jury, the sixth juror to be polled stated that the jury's verdict really was not her verdict because there were things that were not clear to her. The court directed the clerk to continue the polling of the remaining jurors, all of whom indicated their agreement with the guilty verdict. The court then asked the dissenting juror if there was some problem, and the dissenting juror indicated that she did not understand how there could be possession by the defendant under the circumstances. After the jury had been sent to the jury room and had been ordered not to discuss the case, defense counsel indicated that the events constituted a mistrial. After considering the question during the evening recess, the court, treating defense counsel's remark as a motion for a mistrial, indicated that it would grant a mistrial. However, when the court asked defense counsel whether the defendant consented to the mistrial, defense counsel indicated that although the defense had asked for a mis-

trial and continued to believe that the facts required the declaration of a mistrial, the defense did not consent to the mistrial. The court then determined that, under the circumstances, manifest necessity required it to declare a mistrial.

2. MCR 6.420(C) provides that if a polling of a jury discloses that the jurors are not in agreement, the court may either discontinue the poll and order the jury to retire for further deliberations or declare a mistrial either with the defendant's consent or after a finding that the jury is deadlocked or some other manifest necessity exists. Because the court failed to immediately discontinue the polling of the jury and made inquiry of the dissenting juror concerning the nature of her doubt concerning the verdict, there existed manifest necessity to declare a mistrial under the circumstances. Further, although defense counsel refused to acquiesce specifically to the mistrial, his request for a mistrial, coupled with his indication that the circumstances required a mistrial, constituted consent to the mistrial. Accordingly, the trial court properly granted the mistrial, and defendant's retrial did not violate double jeopardy principles.

3. Although the affidavit in support of the search warrant was based on information that came from an unnamed informant, there were sufficient facts averred by the affiant to allow the magistrate to conclude that the informant was credible and sufficient facts from which the magistrate could conclude that the information relative to the question of probable cause was based on the informant's personal knowledge. Accordingly, the trial court properly denied the motion to suppress the evidence discovered pursuant to the execution of the search warrant.

4. The defendant had been represented at his first trial by two attorneys. On the morning that the second trial was scheduled to begin, one of the defense attorneys indicated that the defense had determined that it would be preferable that the defendant be represented by one attorney, that the defendant wished him to conduct the defense, but that he was then in the middle of another trial. Accordingly, a motion to adjourn the defendant's trial was made, as was a motion by the second attorney to withdraw as counsel for the defendant. The trial court denied both the motion to withdraw and the motion for an adjournment, finding that the motion to withdraw, coming on the day trial was scheduled to begin, was a delaying tactic on the defendant's part. On the basis of the record on appeal, it cannot be said that the trial court clearly erred in determining that the tardy motion for withdrawal was for the mere purpose of delay of the proceedings.

5. There was sufficient evidence to find the defendant guilty of possession of the cocaine.

Affirmed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Karen M. Woodside*, Assistant Prosecuting Attorney, for the people.

*Karri Mitchell*, for the defendant.

Before: DOCTOROFF, P.J., and SAWYER and FITZGERALD, JJ.

PER CURIAM. Defendant was charged with possession with intent to deliver 650 or more grams of cocaine, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i), and possession with intent to deliver marijuana, MCL 333.7401(2)(c); MSA 14.15(7401)(2)(c). Defendant's first trial ended in a mistrial. On retrial, a jury found defendant guilty of possession of 650 or more grams of cocaine, MCL 333.7403(2)(a)(i); MSA 14.15(7403)(2)(a)(i). He was sentenced to life in prison. Defendant now appeals as of right. We affirm.

Defendant first argues that his retrial violated his double jeopardy rights. We disagree. This issue presents a question of constitutional law, which we review de novo. *People v White*, 212 Mich App 298, 304-305; 536 NW2d 876 (1995).

At defendant's first trial, the jury returned a verdict of guilty of possession of 650 or more grams of cocaine. However, during the polling of the jurors, the sixth juror to be polled stated: "It wasn't really my verdict. I didn't—there were things that wasn't [sic] clear with me." The trial judge then directed the court clerk to continue the polling of the remaining jurors,

all of whom indicated their agreement with the guilty verdict. After explaining that a verdict in a criminal case must be unanimous, the following exchange took place between the trial judge and the dissenting juror:

> *Court*: I mean, the jurors sent back a note saying we have reached a verdict. You had reached a verdict. As I said, it should be the individual judgment of each juror. You were part of the jury. Now, is there some problem?
>
> *Juror*: Well, yes, there's a problem and they were trying to explain it to me over and over and over. I just didn't understand the possession. Just because something was in a house, that doesn't mean that someone knew it was there. That's how I felt. So, I don't know how to explain it. They explained it to me—
>
> *Court*: You don't have to tell me how they explained it to you or how you explained it to them.

The trial judge then sent the jury into the jury room and ordered the jurors not to discuss the case. Subsequently, the following exchange occurred between the court and counsel:

> *Defense Counsel*: And I'm glad she decided to be a strong woman and to be honest with this Court and says [sic] what she believed. Just because it's in the house, doesn't mean it's his. That's her belief and that's probably what she was trying to advocate back there and this is what she told the Court. That's not her verdict and it had to be unanimous. And now, to—and she's already told the Court—for the Court—her position. Just because it's in the house, doesn't mean that he had—that he knows it's there. And that's her position. And as far as I'm concerned, it's a mistrial.
>
> We cannot send them back in now and say well twist, let's twist the arm some more and try to make her believe that because something is in the house it—they got [sic] to know about it or it's theirs.
>
> *Court*: Mr. Rollstin?

> *Prosecutor*: Judge, there's no basis for a mistrial here. And what the Court should do is instruct them to continue deliberating. And what you've got is a situation where the jurors are not unanimous and they should go back in there and continue deliberating. If they tell you they can't reach a verdict, then we cross that bridge when we get there.

The trial judge informed counsel that he intended to research the issue overnight, and that he would order the jury to return the following morning. The trial judge then stated, apparently to defense counsel, "Your motion for a mistrial is taken under advisement and may be granted tomorrow."

The following morning, the trial judge explained that, pursuant to MCR 6.420, the court erred in allowing the polling to continue after one of the jurors expressed disagreement with the verdict. The trial judge stated, "I think based on that and the *Wilson*[1] case, the defense's motion for a mistrial must be granted." The following exchange then occurred:

> *Prosecutor*: Now, I understand the Court's position, but I think you also have to—if you're going to declare the mistrial, you have to explain to Mr. Echavarria his options, and the court rule talks about his consent, the defendant's consent. I think that ought to be taken on the record, if that's going to be done.
>
> *       *       *
>
> *Court*: Well, it was the defense's motion for a mistrial, so, I take it with that, that it was with Mr. Echavarria's consent for the mistrial, is that correct, Mr. Mitchell?
>
> *Defense Counsel*: Well, Judge, I don't want to indicate that it's—I indicated that I asked for a mistrial because of the

---

[1] *People v Wilson*, 390 Mich 689; 213 NW2d 193 (1973).

jurors—what the juror—what the jury said—what the juror said, juror number eight.

Now, whether or not—it's not—it's not with our "consent" per se. My position is that it has to be declared because of that. So, I don't want—no, it's not with our consent. It has to be declared because of what happened and because of what the case law says.

\* \* \*

*Court*: So, the question again is, is that with your consent?
*Defense Counsel*: No, Judge.

The prosecutor then argued that, pursuant to MCR 6.420, if defendant did not consent to a mistrial, then a mistrial could only be declared if manifest necessity existed. The prosecutor asked whether the court had made a finding of manifest necessity. In response, the court stated:

*Court*: As I said earlier, I think based on these circumstances a mistrial is in order and I stand by that based on the court rule and the case law.

\* \* \*

I do think that the Court continuing the polling, coupled with my inquiry of that jury [sic] after the side bar with all the attorneys, and at the side bar before the additional inquiry is made, the defense moved for a mistrial at that point. That the additional inquiry coupled with the continuation of the polling will result in the manifest necessity, which would declare a mistrial.

*Defense Counsel*: Thank you, Judge. Are we going to get another date today?

*Court*: And this was yesterday, as I said, for defendant's motion. So, I think that takes care of the manifest necessity. I'll give you a date right now.

MCR 6.420(C), which governs the polling of a jury in a criminal trial, provides:

> Before the jury is discharged, the court on its own initiative may, or on the motion of a party must, have each juror polled in open court as to whether the verdict announced is that juror's verdict. If polling discloses the jurors are not in agreement, the court may (1) discontinue the poll and order the jury to retire for further deliberations, or (2) either (a) with the defendant's consent, or (b) after determining that the jury is deadlocked or that some other manifest necessity exists, declare a mistrial and discharge the jury.

If a juror expresses disagreement with the verdict when the jury is polled, the jury must be sent out for further deliberations. MCR 2.512(B)(3); *People v Booker (After Remand)*, 208 Mich App 163, 168; 527 NW2d 42 (1994). Here, it is clear that the trial court erred in failing to discontinue the polling and in failing to send the jury out for further deliberations. *Id.* The trial court further erred in questioning the dissenting juror regarding the nature of her disagreement with the verdict. *Id.* at 169. The continuation of the polling and the subsequent questioning of the dissenting juror were improper because of their potentially coercive effect. *Id.* See Staff Comment to MCR 6.420. The trial court declared a mistrial on the basis of its errors in continuing the polling of the jury and questioning the dissenting juror. Defendant does not argue that the declaration of a mistrial was improper, but argues that his retrial was barred by double jeopardy principles.

The United States and Michigan Constitutions prohibit a defendant from being twice placed in jeopardy for the same offense. US Const, Ams V, XIV; Const 1963, art 1, § 15; *People v Dawson*, 431 Mich 234, 250;

427 NW2d 886 (1988). When a mistrial is declared, retrial is permissible under double jeopardy principles where manifest necessity required the mistrial or the defendant consented to the mistrial and the mistrial was caused by innocent conduct on the part of the prosecutor or judge, or by factors beyond their control. *People v Mehall,* 454 Mich 1, 4; 557 NW2d 110 (1997); *Dawson, supra* at 252-253.

Here, defendant's retrial did not violate double jeopardy principles because the mistrial was granted on the basis of manifest necessity. Manifest necessity is not a precisely defined concept and must be determined case by case. *Booker, supra* at 172. Manifest necessity "appears to refer to the existence of sufficiently compelling circumstances that would otherwise deprive the defendant of a fair trial or make its completion impossible." *People v Rutherford,* 208 Mich App 198, 202; 526 NW2d 620 (1994). Therefore, "[a] trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial." *Illinois v Somerville,* 410 US 458, 464; 93 S Ct 1066; 35 L Ed 2d 425 (1973).

This Court has found manifest necessity to exist under circumstances similar to those of the instant case. In *Booker,* as in the instant case, during the polling of the jurors, one of the jurors expressed doubt with respect to the verdict. *Booker, supra* at 166. The trial judge continued the poll of the jurors and later questioned the dissenting juror regarding the nature of her doubt. The defense counsel objected to the trial court's conduct and requested a mistrial on the

basis of the lack of a unanimous jury. However, the trial court denied the defense counsel's motion for a mistrial, accepted the verdict, and discharged the jury. *Id.* On appeal, this Court declared a mistrial sua sponte and remanded the matter to the trial court for a new trial, explaining that "there is 'manifest necessity' to declare a mistrial because the jury, which was not ordered to undertake further deliberations, was unable to reach a unanimous verdict." *Id.* at 174. See also *Wayne Co Prosecuting Attorney v Detroit Recorder's Court Judge,* 64 Mich App 408; 235 NW2d 799 (1975).

Similarly, in the instant case, there was manifest necessity to declare a mistrial "because the jury, which was not ordered to undertake further deliberations, was unable to reach a unanimous verdict." *Booker, supra* at 174. See also *Wayne Co Prosecuting Attorney, supra* at 410. Furthermore, because of the coercive effect of the trial court's errors in continuing the polling and questioning the juror regarding the nature of her doubt regarding the verdict, if a mistrial had not been declared and the jurors had continued their deliberations, the resulting verdict "would have to be reversed on appeal due to an obvious procedural error in the trial." *Somerville, supra* at 464. Accordingly, because manifest necessity required the mistrial, defendant's retrial did not violate double jeopardy principles.

Furthermore, defendant consented to the mistrial. Defense counsel argued that a mistrial was warranted because of the trial court's erroneous response to the juror's disagreement with the verdict, but, at the same time, refused to consent to a mistrial. Where defense counsel clearly indicates an unwillingness to continue

the trial, but refuses to acquiesce to a mistrial, the defendant can be said to have "consented to discontinuance of the trial by expressly objecting to its continuance." *People v Tracey*, 221 Mich App 321, 327; 561 NW2d 133 (1997). Under such circumstances, retrial is permissible under double jeopardy principles because consent constitutes a waiver of a double jeopardy claim:

> Generally, if a defendant consents to the discontinuance of a trial, he consents to the loss of his "right to have his trial completed by a particular tribunal." This is true even where, as here, the defendant consents to the discontinuation of the trial while technically not consenting to the mistrial. Accordingly, to determine whether consent makes retrial permissible under double jeopardy principles, the relevant issue is whether a defendant consented to the discontinuance of the trial, rather than whether he formally consented to the declaration of a mistrial. In the context of clear evidence demonstrating that defendant elected to forgo his right to continue the trial by unequivocally consenting to its discontinuation, we hold that the prohibition against double jeopardy does not bar retrial here. [*Id.* at 329.]

Here, clearly, defense counsel did not wish to continue the trial and to allow the jurors to continue their deliberations. Defense counsel repeatedly stated that a mistrial was required and further stated, "We cannot send them back in now and say well twist, let's twist the arm some more and try to make her believe that because something is in the house it— they got [sic] to know about it or it's theirs." Furthermore, on several occasions, both the trial court and defense counsel indicated that the defense had requested a mistrial. Nevertheless, defense counsel refused to acquiesce specifically to the declaration of

a mistrial, stating: "[I]t's not with our 'consent' per se. My position is that it has to be declared because of that. So, I don't want—no, it's not with our consent. It has to be declared because of what happened and because of what the case law says." Under these circumstances, we conclude that defendant consented to the discontinuance of his trial even if he did not formally consent to the declaration of a mistrial. *Id.* Accordingly, because manifest necessity required a mistrial and because defendant consented to a mistrial, defendant's retrial was proper.

Defendant next argues that the trial court erred in failing to suppress evidence seized pursuant to a search warrant. Specifically, defendant argues that the affidavit supporting the search warrant did not contain sufficient information to support a finding of probable cause. We disagree. We review for clear error a trial court's findings of fact regarding a motion to suppress evidence. *People v Darwich,* 226 Mich App 635, 637; 575 NW2d 44 (1997). However, we review de novo the trial court's ultimate decision regarding a motion to suppress. *Id.*

A search warrant affidavit prepared on the basis of information provided to the affiant by an unnamed person must provide sufficient facts from which a magistrate could find that the information supplied was based on personal knowledge and that either the unnamed person was credible or that the information was reliable. MCL 780.653; MSA 28.1259(3); *People v Poole,* 218 Mich App 702, 706; 555 NW2d 485 (1996). When reviewing a magistrate's decision to issue a search warrant, this Court must evaluate the search warrant and underlying affidavit in a commonsense and realistic manner. *Id.* at 705. This Court must then

determine whether a reasonably cautious person could have concluded, under the totality of the circumstances, that there was a substantial basis for the magistrate's finding of probable cause. *Id.* Statements containing multiple levels of hearsay may be used to establish probable cause where the ordinary requirements of personal knowledge and reliability or credibility are met for each level of hearsay. *Id.* at 706; *People v Brooks*, 101 Mich App 416, 419; 300 NW2d 582 (1980).

Here, the search warrant affidavit provided sufficient facts from which a magistrate could find that the information supplied was based on personal knowledge and that the unnamed person was credible. In the affidavit supporting the search warrant, a police officer averred that he had used this informant at least three times, resulting in more than three arrests and more than three convictions. Therefore, sufficient facts existed from which a magistrate could conclude that the informant was reliable. Furthermore, sufficient facts existed from which the magistrate could conclude that the information supplied was based on the informant's personal knowledge. The affidavit stated that the informant waited outside 6566 McDonald while a person, referred to in the affidavit by the sobriquet "unwitting," went into the house for the purpose of a drug transaction. When "unwitting" came out of the house, he showed the informant, who was familiar with the appearance of cocaine and the manner in which it is packaged, a quantity of cocaine and stated, "Junior is on full and he can handle anything you want." Defendant argues that the statement made by "unwitting" that "Junior is on full and he can handle anything you want" was

double hearsay and was improperly relied on for the purpose of the affidavit because it was not shown that "unwitting" was reliable or that the statement he made was credible. However, even if the double hearsay statement were stricken from the affidavit, the affidavit still would support a finding of probable cause. Therefore, the trial court did not clearly err in concluding that there was probable cause to issue a search warrant.

Next, defendant argues that the trial court erred in failing to allow him to be represented by the counsel of his choice. We disagree. A trial court's decision whether to grant a continuance is reviewed for an abuse of discretion. *People v Peña*, 224 Mich App 650, 660; 569 NW2d 871 (1997), mod 457 Mich 883 (1998). An abuse of discretion occurs when the result was so violative of fact and logic that it evidenced a perversity of will, a defiance of judgment, or an exercise of passion or bias. *People v Torres*, 222 Mich App 411, 415; 564 NW2d 149 (1997).

Defendant was represented by Wright Blake and Karri Mitchell at his first trial. On the morning that defendant's second trial was to begin, Blake told the trial court he could not try the case because he was in the middle of another trial. Blake asked the trial court for an adjournment. Mitchell explained that during the defendant's first trial the prosecution used the fact that defendant had two attorneys against him. Mitchell stated that he was ready to try the case and explained that either attorney was capable of handling the case alone, but that defendant wanted Blake to try the case. Mitchell then requested that he be allowed to withdraw from the case.

When reviewing a trial court's decision to deny a defense attorney's motion to withdraw and a defendant's motion for a continuance to obtain another attorney, we consider the following factors: (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the defendant was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. *Peña, supra,* 224 Mich App 661.

In the present case, the trial court did not abuse its discretion in denying Mitchell's motion to withdraw and in refusing to grant an adjournment. Although defendant was asserting his constitutional right to counsel, there was no bona fide reason for asserting the right. Nothing in the record indicates that there was a dispute between defendant and Mitchell and, in fact, Mitchell described his relationship with defendant as "good." Furthermore, even if defendant had a bona fide reason for asserting his right, he was negligent in failing to assert it earlier. Defendant's reason for choosing between Blake and Mitchell was that defendant felt the prosecution was trying to portray him as a "big drug dealer" because he could afford two attorneys. Defendant was aware that the prosecution had portrayed him in this manner during his first trial held four months earlier. Although defendant had four months to substitute counsel, Mitchell waited until the day of defendant's second trial to inform the trial court that he wished to withdraw. Therefore, defendant was negligent in failing to assert this right

earlier. Finally, the trial court was convinced that the motion to withdraw was another delaying tactic on defendant's part. Reviewing the history of the case, we cannot conclude that the trial court's belief was erroneous. Accordingly, we conclude that the trial court did not abuse its discretion in failing to grant Mitchell's motion to withdraw.

Finally, defendant claims that insufficient evidence was presented at trial to prove that he had possession of the cocaine. We disagree. When reviewing the sufficiency of the evidence in a criminal case, we must view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Vronko*, 228 Mich App 649, 654; 579 NW2d 138 (1998).

A person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession. *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Instead, some additional connection between the defendant and the contraband must be shown. *Id.* Here, several connections between defendant and the cocaine established that defendant had possession of the cocaine. First, a picture introduced at trial and a bill bearing defendant's name established that defendant was connected to the house in which the cocaine was found. Furthermore, after the police informed defendant that cocaine was found in the basement, defendant stated, "[T]hat's all there is, don't tear up the house." Defendant's statement shows that he had knowledge of the cocaine in his basement. Two individuals present when the search warrant was exe-

cuted gave statements to the police indicating that defendant had been in the basement, where the cocaine was found, on the day the warrant was executed. Finally, defendant's fingerprints were found on two plates on which the cocaine was found. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the prosecution proved the element of possession beyond a reasonable doubt.

Affirmed.