*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL PHILLIP OAKS,

        Defendant-Appellant.

UNPUBLISHED
October 26, 2023

No. 362044
Ionia Circuit Court
LC No. 2020-018102-FC

Before: RICK, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I) pursuant to MCL 750.520b(1)(a) (sexual penetration of victim under 13 years of age, defendant 17 years of age or older); another two counts of CSC-I pursuant to MCL 750.520b(1)(b)(*i*) (sexual penetration of victim at least 13 years of age by a member of the same household); two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with a victim less than 13 years of age); and one count of capturing an image of an unclothed person, MCL 750.539j(1)(b). The trial court sentenced defendant to serve 25 to 50 years in prison for three of the CSC-I convictions, one consecutive term of 25 to 50 years in prison for the fourth CSC-I conviction, 10 to 15 years in prison for the CSC-II convictions, and 3 to 5 years in prison for the conviction of capturing an image of an unclothed person. We reverse.

## I. FACTUAL BACKGROUND

This case arises out of the victim's disclosure to her mother that defendant, her stepfather, sexually abused her. According to the victim, the abuse began when she was about six or seven years old and asked defendant to lie next to her in her bed one night because she could not sleep. While defendant was lying in the victim's bed, he rubbed her back, chest, and vagina. The victim asserted that the sexual abuse escalated to vaginal penetration and oral sex, which continued for several years. The abuse occurred in the victim's bedroom, in other rooms of the house, in defendant's truck, and in a tent on a family camping trip.

-1-

The victim confessed to her mother that defendant was sexually abusing her in February 2020. After charges were filed against defendant, the victim's mother found a plastic bag of secure digital (SD) cards at the back of a cabinet in a bathroom that had primarily been used by defendant. The victim's mother testified that she found videos of her bedroom on the SD cards, including one that showed the victim walking through the room naked when she was 13 years old. She also found a camera with an SD card hidden in a phone charger that had been plugged into a power strip near her headboard. The victim's mother turned the SD cards over to police. A total of 219 videos were discovered, one of which depicted the victim naked. After a two-day trial, defendant was convicted and sentenced as noted. This appeal followed.

## II. ANALYSIS

Defendant contends that the trial court abused its discretion when it denied his motion for mistrial because the trial court's violation of MCR 6.420(D) deprived him of his right to a unanimous verdict. We agree.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014). "The trial court should only grant a mistrial for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *Id.* (quotation marks and citations omitted).

MCR 6.410(B) provides that, in criminal trials, "[a] jury verdict must be unanimous." MCR 6.420(D) addresses jury polling after the verdict. The rule states:

> Before the jury is discharged, the court on its own initiative may, or on the motion of a party must, have each juror polled in open court as to whether the verdict announced is that juror's verdict. If polling discloses the jurors are not in agreement, the court may (1) discontinue the poll and order the jury to retire for further deliberations, or (2) either (a) with the defendant's consent, or (b) after determining that the jury is deadlocked or that some other manifest necessity exists, declare a mistrial and discharge the jury. [MCR 6.420(D).]

After the foreperson read the jury's verdict finding defendant guilty on 7 of 15 counts, the trial court polled the jury at defendant's request. The following exchange occurred:

> *The Court*: So, ladies and gentlemen, that simply means that I'm gonna go, and I'm gonna start with Juror number one, so this corner, and I would simply ask each of you is that and was that your verdict, referencing all 15 counts.
>
> So I'll start with Juror number one in the back seat all the way over here in the row, Ms. Riccius, was that and is that your verdict?
>
> *Juror Riccius*: (No verbal response)

*The Court*:  All right.  And we have to hear it.

*Juror Riccius*:  Yes.

*The Court*:  Okay.  Juror number two, was that and is that your verdict?

*Juror Green*:  Yes.

*The Court*:  Juror number three, was that and is that your verdict?

*Juror Grove*:  I chose not guilty all but one.

*The Court*:  Okay.  But as it relates to those counts that were just read, are all of those counts your verdict?

*Juror Grove*:  (No verbal response)

*The Court*:  Are those your verdicts?

*Juror Grove*:  No.

*The Court*:  All right.  Then we do not have a unanimous verdict.  Are there any counts that you were unanimous on?

*Juror Grove*:  Just 15, I think.

*The Court*:  Fifteen.  Let's continue.

So then, Juror number four, was that and is that your verdict?

*Juror Osborne*:  Yes.

*The Court*:  Juror number five, was that and is that your verdict?

*Juror Heaton-Barger*:  Yes.

\* \* \*

*The Court*:  All right.  So Juror number three, I want to go back to you. You're indicating that you agreed with the other 11 jurors on Count 15, but I'm going to—well, help me out because there were several not guilties and several guilties.  Which ones were you not in agreement with?

*Juror Grove*:  Three.

*The Court*:  Three?  Three of the counts or just count three?

*Juror Grove*:  Number three.  Pretty much all of the guilty ones except 15.

*The Court*: Except for 15. So all of the guilty ones except for 15.

That means we don't have a unanimous verdict. The only way the Court knows how to handle this is I'm gonna send you back to deliberate. I'm gonna give you a new jury—or verdict form. So I'm gonna collect that one. I'll send you back to continue your deliberations. And then you can let us know how that is going. All right.

The jury deliberated for another hour and returned with the same verdict. When the trial court again polled the jury, all the jurors expressed agreement with the verdict.

Defendant argues that continuing to poll the jurors after Juror Grove stated that she did not agree with the verdict was error sufficient to warrant a mistrial. The prosecution concedes that the trial court erred by continuing to poll the jurors, but argues that this conduct was not ultimately coercive enough to justify a mistrial. We agree with defendant. Whether continuing to poll the jury is error warranting a mistrial has been discussed by this Court in a number of pertinent cases. One such case is *People v Echavarria*, 233 Mich App 356; 592 NW2d 737 (1999). There, when the trial court polled the jurors, one juror said that she did not agree with the verdict and that some things remained unclear to her. *Id*. at 358. The trial court had the court clerk continue to poll the remaining jurors and then explained that the verdict in a criminal case must be unanimous. *Id*. at 358-359. The juror again indicated that she did not believe that the prosecution had sufficiently proven an element of the charged crime. *Id*. At that point, the defendant's counsel argued that the trial court should declare a mistrial, noting that any further deliberations would be tainted because the juror expressed an opinion that she likely already tried to express to the other jurors. *Id*. The prosecution disagreed and argued that the trial court should instruct the jurors to continue deliberations. *Id*. at 360. The trial court ultimately granted the defendant's motion for a mistrial and ruled that manifest necessity required it because the court erroneously continued to poll the jurors and made additional inquiries to the individual juror. *Id*. at 361. This Court affirmed, explaining:

If a juror expresses disagreement with the verdict when the jury is polled, the jury must be sent out for further deliberations. MCR 2.512(B)(3); *People v Booker (After Remand)*, 208 Mich App 163, 168; 527 NW2d 42 (1994). Here, it is clear that the trial court erred in failing to discontinue the polling and in failing to send the jury out for further deliberations. *Id*. The trial court further erred in questioning the dissenting juror regarding the nature of her disagreement with the verdict. *Id*. at 169. The continuation of the polling and the subsequent questioning of the dissenting juror were improper because of their potentially coercive effect. *Id*. See Staff Comment to MCR 6.420. [*Echavarria*, 233 Mich App at 362.]

In *Booker*, 208 Mich App at 166, which was cited in *Echavarria*, the jury found the defendant guilty of voluntary manslaughter, but during polling of the jury, "the foreperson expressed doubt regarding whether the verdict should be voluntary or involuntary manslaughter." The trial court "questioned the juror about the nature of her doubt," but no further explanation indicated what inquiry the trial court made. *Id*. The juror later wrote a letter to the trial court and explained that her verdict may have been different if the jury deliberated longer, but the jury

-4-

compromised because the jurors were tired and thought that they might have to deliberate during the evening or over the weekend to reach a verdict. *Id*. The trial court denied the defendant's motion for mistrial and denied a later motion for new trial. *Id*. at 166-167.

This Court reversed and held that the trial court erred by continuing to poll the jury pursuant to what was then MCR 6.420(C), *id*. at 167-168, which is identical to what is now MCR 6.420(D). In its analysis, this Court relied on the staff comment for the rule:

> The option . . . permitting the court to "discontinue the poll and order the jury to retire for further deliberations" requires the court to cut off the polling as soon as disagreement is disclosed. The court should not allow the polling to continue because of its potentially coercive effect. Nor, for the same reason, should the court question the jury to determine where the jury stands numerically. See *People v Wilson*, 390 Mich 689[; 213 NW2d 193] (1973). [*Booker*, 208 Mich App at 168 (brackets in original).]

Thus, it is clear that a mistrial is not warranted when a juror simply expresses disagreement during polling because the court rule requires that the jury be sent for further deliberations when this occurs. *Id*. Rather, the trial court's conduct warrants a mistrial when it continues to question a juror about the verdict or continues to poll the jury instead of sending the jury for further deliberations. Such actions create a coercive atmosphere and can cast doubt on the jury's verdict. *Id*.

The staff comment to MCL 6.420(D) also cites *Wilson*, 390 Mich 689, in stating that the trial court should not "question the jury to determine where the jury stands numerically." In *Wilson*, the jury informed the trial court that it could not agree on a verdict, and while the jury was seated in the courtroom, the trial court asked the foreman how the jury stood "numerically." *Id*. The foreman told the court that the count was 11 to 1, and the trial court remarked, "Well, that is not very far from a verdict." *Id*. The court went on to remind the jury of its duty to determine the facts, apply the law to those facts, and to decide the case. *Id*. The trial court then instructed the jurors to further deliberate giving due consideration to the opinions of others. *Id*. The jury later returned with a verdict for conviction, and the defendant appealed. *Id*. This Court held that the trial court's inquiry about the numerical division of the jury "had the tendency to be coercive," and our Supreme Court agreed. *Id*. at 691-692. As the Supreme Court stated, "The clear implication of the trial judge's remark was that only one more juror remained to be convinced in order to permit the return of a unanimous verdict." *Id*. at 691. Therefore, the Court ruled:

> Whenever the question of numerical division of a jury is asked from the bench, in the context of an inquiry into the progress of deliberation, it carries the improper suggestion that the state of numerical division reflects the stage of the deliberations. It has the doubly coercive effect of melting the resistance of the minority and freezing the determination of the majority. [*Id*. at 692.]

On that basis, our Supreme Court agreed that the defendant was entitled to a new trial. *Id*.

After applying these principles here, we agree with defendant that the trial court's continued polling of the jury had a coercive effect warranting a mistrial, in violation of

MCR 6.420(D). Once the trial court polled the jury and the jury resumed deliberations, the trial court observed that it had never had a juror voice a disagreement with a verdict when polled. Additionally, earlier during deliberations, the jury sent out a note to the trial court, which asked, "Is it possible to change a juror member given how uncomfortable and very upset trying to reach a verdict? Can we call the 13th juror we sent home?" The trial court observed that it seemed "fairly obvious" after polling that the note from the jury reflected Juror Grove's wish to be replaced because "she just didn't want to make this decision." But notwithstanding this observation, it allowed deliberations to continue. After discharging the jury, the trial court observed that the jury never expressed that it could not reach a verdict and that Juror Grove did not express any of her previous reservations when polled the second time. The court expressed some continuing confusion about the requirements of MCR 6.420(D), but believed a mistrial was not required because the jurors indicated that they unanimously agreed when they read the verdict the second time. The trial court thus denied defendant's motion for a mistrial.

As discussed, deviations from the rule are improper and require the trial court to declare a mistrial because they act to compel a dissenting juror to surrender any doubt and fall in line with the other jurors. Although the record does not suggest that the trial court acted with an overt intent to press Juror Grove into agreeing with the majority verdict, its decision to continue polling the jury nevertheless created an environment in which Juror Grove may have felt compelled to do so. This is why MCR 6.420(D) requires a trial court to immediately stop polling when a juror expresses disagreement.

Additionally, as defendant correctly observes, when the trial court polled the jury, the court had already received a jury question indicating that one of the jurors was struggling and asking if an alternate juror could be produced. Under these circumstances, the trial court's decision to question a juror about which counts were unanimous and which were not irreparably damaged the integrity of the jury's verdict. It is true that here, unlike in *Wilson*, the trial court did not expressly inquire about the numerical division of the jury during deliberations, and instead obtained the numerical division after the verdict, and after Juror Grove stated that she disagreed with the verdict. However, the impact is the same any time a jury must continue deliberations after polling. At whatever stage of deliberations, if one or more jurors disagree, an inquiry into how close the jury is to a unanimous verdict has the tendency to be coercive when deliberations resume.

Further, the trial court's decision to poll the nine remaining jurors after Juror Grove voiced her dissent merely served to highlight that the vote was 11 to 1. As the Court explained in *Wilson*, 390 Mich at 692, this continued polling carried with it the "coercive effect of melting the resistance of the minority and freezing the determination of the majority." Both the questioning and the continued polling had the potential to convince Juror Grove to abandon her objections and rendered suspect the true unanimity of the verdict. These are the very reasons our reviewing courts do not affirm verdicts rendered after trial courts deviate from the requirements of MCR 6.420(D). Because the trial court's failure to comply with MCR 6.420(D) was prejudicial to defendant's right to a unanimous verdict, and its prejudicial effect could not be mitigated or removed in any way, we conclude that the trial court abused its discretion by denying defendant's motion for a mistrial. See *Lane*, 308 Mich App at 60. Therefore, defendant is entitled to a new trial.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.[1]

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates

---

[1] In light of our dispositive holding on this issue, we need not address defendant's other claims on appeal.